AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Robert GURULE and<br>Izatah HAUSNER | ) | Case No.  MJ 26-2036 KK |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of     10/2/25, 12/5/25, and 4/24/26     in the county of     Bernalillo and Valencia     in the
District of     New Mexico     , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(o) and 924(a)(2) | Unlawful Possession and Transfer of a Machinegun (three violations) |
| 18 U.S.C. § 2 | Aiding and Abetting |

This criminal complaint is based on these facts:

Please see the attached affidavit of ATF Task Force Officer Paula Steeples, which is incorporated by reference and has been reviewed by AUSA Lou Mattei.

☑ Continued on the attached sheet.

*Complainant's signature*

Paula Steeples, ATF Task Force Officer
*Printed name and title*

Sworn telephonically and signed electronically.

Date:     April 24, 2026

*Judge's signature*

City and state:     Albuquerque, New Mexico          Honorable Kirtan Khalsa, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since October 2024.  As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516.

2.      I have over 12 years of law enforcement experience.  During my tenure in law enforcement, I have been assigned to investigate various crimes including but not exclusive to, crimes against children, trafficking crimes, drug crimes, sex crimes, and violent crimes.  In addition, I have obtained specialized training in being a first-line supervisor, tactical capabilities, crisis negotiations, and in the investigation of cold cases and "no body" investigations.  I have conducted several criminal investigations leading to the arrest and conviction of persons in violation of New Mexico state statutes.

3.      Through ATF, I have received instruction and training in the investigation of violations of federal drug-trafficking and firearms laws.  My training and experience includes, among other things, (1) interviewing defendants and witnesses; (2) conducting surveillance; (3) analysis and processing of documentary, electronic, and physical evidence; (4) the legal and illegal purchase of firearms; (5) the execution of arrest and search warrants seeking firearms and narcotics; and (6) investigations of drug trafficking and firearms trafficking offenses.

4.      This affidavit is based on my observations and information obtained from other law enforcement sources.  It does not set forth all of my knowledge related to this investigation, but only those facts necessary to establish probable cause for the requested complaint.

5.      This affidavit is submitted in support of a criminal complaint charging the following violations:

   a.   On October 2, 2025; December 5, 2025; and April 24, 2026, in Bernalillo and Valencia Counties, in the District of New Mexico, Robert GURULE violated 18 U.S.C. §§ 922(o) and 924(a)(2), that being Unlawful Possession and Transfer of a Machinegun; and

   b.   On April 24, 2026, in Bernalillo County, in the District of New Mexico, Izatah HAUSNER violated 18 U.S.C. §§ 922(o) and 924(a)(2), that being Unlawful Possession and Transfer of a Machinegun, and 18 U.S.C. § 2, that being Aiding and Abetting.

1

**PROBABLE CAUSE**

## I.    Background of Investigation

6.    In August and September 2025, an ATF undercover agent (UC) learned about Robert GURULE advertising for sale various firearms and suspected machineguns through the social media platform Facebook.  The UC also obtained a telephone number for GURULE.

7.    In September 2025, the UC observed multiple videos of GURULE holding and firing a suspected machinegun.  Screenshots from these videos are included below:



## II.    Transaction on October 2, 2025 (GURULE only)

8.    On October 2, 2025, the UC contacted GURULE via telephone.  During their conversation, GURULE agreed to sell the UC a rifle with a machinegun conversion device (MCD)[1] installed in the firearm, and one 100-round drum magazine.  They agreed to meet at a location in Bernalillo County in the District of New Mexico to complete the sale.

9.    At approximately 4:05 p.m., GURULE arrived at the meet location driving a white Chevrolet Impala.  GURULE was the driver and sole occupant of the vehicle.  The UC got inside

---

[1] Based on my training and experience, I know that a machinegun conversion device, or MCD, is an umbrella term for a small mechanical device that is manufactured and used for the sole purpose of converting a semi-automatic firearm into a fully automatic one.  MCDs are also commonly referred to as "switches" or "sears."  I know that MCDs are considered machineguns within the meaning of federal law because federal law defines "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger" and the definition includes "any part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun."  *See* 26 U.S.C. § 5845(b) (defining "machinegun") and 18 U.S.C. § 921(a)(24) (incorporating definition from 26 U.S.C. § 5845(b)).  Therefore, MCDs alone, as well as any firearms into which MCDs are installed, meet the statutory definition of "machinegun."

GURULE's vehicle, and GURULE handed the UC a firearm magazine. GURULE then asked the UC, "You ever shot a fully? This fucker spits. Lots of recoil." Based on my training and experience, I know that "fully" is a common slang term for a fully automatic firearm (i.e., a machinegun). I also believe that the term "spits," in this context, is a reference to the firearm having a rapid rate of fire, like a machinegun.

10.    GURULE then grabbed the suspected machinegun. The UC then asked GURULE if he could get more machineguns. GURULE replied, "Shit all the time. I make it fully dog."

11.    GURULE then began to show the UC how the firearm functioned as a machinegun. GURULE stated, "This is how you know it's a fully. When you hold the trigger down and you pull it back, you'll hear the firing pin go off as soon as I let it go, look. Hear the firing pin?" GURULE then continued to manipulate the firearm to show the UC how it functioned as a machinegun. The UC then asked GURULE what made the firearm a machinegun. GURULE replied, "It has a sear. You just cock it back." Based on my training and experience, I believe GURULE used the term "sear" to refer to the MCD installed on this firearm.

12.    GURULE then again stated that he made the firearm and converted it to being fully automatic. The UC advised GURULE that the UC would contact GURULE to purchase additional firearms in the future because the UC transported firearms to Mexico. The UC then advised GURULE that the UC was interested in purchasing multiple firearms in order to transport them to Mexico. GURULE stated, "Fuck yeah. That is the best place to move them. You will get like five or six racks for this firearm and then with that [referring to the MCD], they fuckin love them." Based on my training and experience, I know "racks" is a slang term for $1,000, and therefore GURULE likely was referring to fully automatic weapons selling for $5,000 to $6,000 when transported to Mexico.

13.    The UC took possession of the suspected machinegun from GURULE. GURULE then showed the UC a video of him shooting the firearm and stated, "Look, I was spitting it the other day. No jams. It has a 3D sear." The UC then asked GURULE if the MCD would break, to which GURULE replied, "Never. I already shot like 1000 rounds, and it's perfect."

14.    The UC paid GURULE $1,600 in official funds for the firearm, and they parted ways.

III.    **Analysis of October 2, 2025, Machinegun**

15.    Subsequent examination of the firearm that the UC purchased from GURULE on October 2, 2025, revealed it to be an Anderson Manufacturing, model AM-15, 5.56 caliber pistol, with an obliterated serial number,[2] with one MCD installed. Photographs of the firearm are included below:

---

[2] Based on my training and experience, I know that crime guns often have the serial number obliterated because this makes the firearm more difficult to trace. I also know that it is a separate violation of federal law to knowingly possess or receive a firearm with an obliterated serial number. *See* 18 U.S.C. § 922(k). For simplicity, this complaint is not seeking to charge an additional violation of this statute.





16.     In December 2025, personnel from ATF's Firearms and Ammunition Technology Division (FATD) examined this firearm.  Based on that examination, and my training and experience, I believe that this firearm, as well as the MCD itself, meet the statutory definition of "machinegun" in 18 U.S.C § 921(a)(24) and 26 U.S.C § 5845(b).  I also believe this firearm was not manufactured in the State of New Mexico, meaning it traveled in interstate commerce prior to the events described above.  This is my preliminary opinion, and the final determination is pending by an ATF Firearms Interstate Nexus Expert.

## IV.     Transaction on December 5, 2025 (GURULE Only)

17.     Beginning on November 19, 2025, the UC and GURULE began exchanging text messages discussing an additional purchase of firearms.  GURULE informed the UC that he had multiple machineguns available for sale.

18.     In December 2025, GURULE agreed to sell the UC three machineguns for a total price of $4,000.  GURULE sent the UC multiple photographs of the firearms:



19.    On December 5, 2025, the UC arranged to meet GURULE to purchase these firearms. The UC and GURULE agreed to meet at GURULE's residence in Los Lunas, in Valencia County, New Mexico.

20.    At approximately 12:57 p.m., the UC arrived at GURULE's residence. GURULE exited the front door carrying three rifles. GURULE approached the UC's vehicle and handed all three firearms to the UC, then entered the passenger seat of the UC's vehicle. Once inside the vehicle, GURULE stated, "I already tested those. Those – those fuckers were scary. They spit." GURULE indicated each of the three firearms had a "sear" installed. GURULE added, "You could tell by holding down the trigger. When – when you pull it back, you'll hear the – the firing pin go off." Based on my training and experience, I believe GURULE was offering a description of how he knew these three firearms were fully automatic.

21.    The UC then provided $4,000 in official funds to GURULE to pay for the three suspected machineguns. After GURULE counted the money, he indicated that he had another firearm (not a machinegun) for sale, and indicated he would sell it for $800. GURULE retrieved it from inside his residence and showed it to the UC inside the UC's vehicle. The UC negotiated a price of $600 for this firearm and purchased it from GURULE as well. The UC and GURULE discussed future purchases of firearms before GURULE exited the UC's vehicle and returned inside his residence.

## V.    Analysis of December 5, 2025, Machineguns

22.    Subsequent examination of the three suspected machineguns that the UC purchased from GURULE on December 5, 2025, revealed them to be:

      a.  an unknown make, unknown model, 5.56 caliber pistol, with unknown serial number, with one MCD installed;

      b.  a Radical Firearms, model RF-15, multi-caliber rifle, serial number 24-057100, with one MCD installed; and

5

c. a CBC Industries Inc., model AR-15, multi-caliber rifle, serial number CBC15RT-00276, with MCD installed. Photographs of the three firearms are included below:



23.    In December 2025, personnel from ATF's Firearms and Ammunition Technology Division (FATD) examined these three firearms. Based on that examination, and my training and experience, I know that all three firearms, as well as the MCDs themselves, meet the statutory definition of "machinegun" in 18 U.S.C § 921(a)(24) and 26 U.S.C § 5845(b). I also believe that these firearms were not manufactured in the State of New Mexico, meaning they traveled in interstate commerce prior to the events described above. This is my preliminary opinion, and the final determination is pending by an ATF Firearms Interstate Nexus Expert.

## VI.    Transaction on April 24, 2026 (GURULE and HAUSNER)

24.    Beginning on April 17, 2026, GURULE contacted the UC and informed the UC that he had acquired additional MCDs. On April 21, 2026, GURULE informed the UC that he had 110 MCDs and agreed to sell them to the UC for $140 each. GURULE sent a photograph of multiple MCDs and agreed to meet the UC in Albuquerque to complete the sale. GURULE later informed the UC he only had 80 MCDs remaining, and the UC agreed to purchase those, as well as any firearms that GURULE was willing to sell.

25.    On April 24, 2026, GURULE and the UC met at a location in Bernalillo County, in the District of New Mexico, to complete the MCD sale. GURULE arrived as the passenger in a vehicle driven by Izatah HAUSNER. The UC engaged in conversation with GURULE and HAUSNER, and instructed them to follow the UC to a separate location, also in in Bernalillo County, in the District of New Mexico, to complete the transaction. GURULE and HAUSNER did so.

6

26.     During the meeting at the second location, GURULE and HAUSNER showed the UC approximately 80 MCDs and two semi-automatic pistols.  HAUSNER told the UC that "he" (referring to GURULE) had tested them all (referring to the MCDs).  The UC counted the approximately 80 MCDs while GURULE and HAUSNER looked on, and then the UC took possession of the MCDs.

27.     GURULE and the UC negotiated a total price of $11,500 for the approximately 80 MCDs and two pistols.  Subsequently, HAUSNER offered to sell the UC one of his own pistols. The UC agreed, and HAUSNER walked to the vehicle he had driven to the deal to retrieve the pistol.  HAUSNER then offered to sell the pistol to the UC for $800.  HAUSNER further told the UC that he sells fentanyl powder and would be interested in acquiring fentanyl powder from the UC.  The UC then provided GURULE with $10,000 in official funds, which GURULE began counting.

28.     At this point, other agents and law enforcement officers moved in to arrest GURULE and HAUSNER.  Both GURULE and HAUSNER were detained.

29.     After being advised of their *Miranda* rights, both GURULE and HAUSNER declined to speak with officers.

## VII.    Analysis of April 24, 2026, MCDs

30.     Based on my training and experience, the course of conduct described above, and a preliminary inspection of the approximately 80 MCDs that GURULE and HAUSNER sold to the UC on April 24, 2026, I believe these are genuine MCDs that function as designed.  I therefore believe that these MCDs meet the statutory definition of "machinegun" in 18 U.S.C § 921(a)(24) and 26 U.S.C § 5845(b).  This is my preliminary opinion, and additional analysis will be conducted by ATF's Firearms and Ammunition Technology Division (FATD).

### CONCLUSION

31.     Based on the foregoing, I respectfully submit that probable cause exists that:

   a.  On October 2, 2025; December 5, 2025; and April 24, 2026, in Bernalillo and Valencia Counties, in the District of New Mexico, Robert GURULE violated 18 U.S.C. §§ 922(o) and 924(a)(2), that being Unlawful Possession and Transfer of a Machinegun; and

   b.  On April 24, 2026, in Bernalillo County, in the District of New Mexico, Izatah HAUSNER violated 18 U.S.C. §§ 922(o) and 924(a)(2), that being Unlawful Possession and Transfer of a Machinegun, and 18 U.S.C. § 2, that being Aiding and Abetting.

32.     This affidavit was reviewed by AUSA Lou Mattei.

33.    I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.


**Paula Steeples**
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives


Electronically signed and sworn via telephone this 24th day of April 2026.


**Honorable Kirtan Khalsa**
United States Magistrate Judge

8